STATE OF MINNESOTA *vs.* MINNEAPOLIS MILLERS' ASSOCIATION.

June 4, 1883.

**Taxes—Personal Property.**—The defendant, a corporation engaged in buying wheat for the benefit of its members with money provided by them for that purpose, in accordance with the requirements of its by-laws, *held* to be the owner of wheat purchased, and of the unexpended money in its hands, and that the corporation was taxable therefor.

Taxes for 1879 were assessed and levied on certain personal property as belonging to defendant, consisting mainly of wheat. Defendant having defaulted in the payment of these taxes, the plaintiff applied to the district court of Hennepin county for judgment against defendant for the amount of the taxes. Defendant having appeared and objected to the entry of judgment, the case was submitted to the court, *Young,* J., presiding, upon stipulated facts, the substance of which is stated in the opinion. Judgment having been ordered in favor of plaintiff, on defendant's motion the case was certified to this court.

*John G. Woolley,* for the State.

*A. L. Levi,* for defendant.

DICKINSON, J.  The question to be determined in this case is whether certain property, consisting of over 100,000 bushels of wheat and of $20,000 in money, was, on the first day of May, 1879, the property of the Minneapolis Millers' Association, a corporation, and hence taxable to it?   The corporation was organized for the general purpose of the "purchase, shipment, storage, and sale of wheat and other cereals."   It was engaged in no other business than that of buying wheat for distribution among its members.   In the prosecution of this business it made no profit.   Its business was conducted by a general agent, appointed by the board of directors, in accordance with the by-laws.   The articles of incorporation restricted membership in the association to those engaged in operating flouring-mills in the county of Hennepin.   The by-laws provided, in substance, that all the wheat wanted by the members of the association, within the territory where it assumed to purchase, should be purchased by the general agent for the association.   Wheat thus purchased by the association was to be divided among the members *pro rata*, the amount each should receive being determined by the proportion which his milling machinery bore to that of all the members.   Upon demand of the general agent, each member was required to pay to him such sum of money as should be necessary for the purchase of his proper share of wheat.   The wheat in question was purchased by the association with money paid by its members for that purpose, as above indicated, and on the first day of May the corporation had the wheat in store, or in shipment consigned to it.   At the same time it had the money in question in its hands for the purchase of wheat, it having been paid over by the members for such purpose.   The learned judge of the court below considered that the wheat purchased by the corporation, and the unexpended money in its hands received for the purpose of purchasing wheat, became the property of the corporation. We think this determination was correct.

Upon the admitted facts a conclusion is to be arrived at by a construction of the by-laws, in accordance with which the business was transacted.   It is, perhaps, impossible to place any construction upon these by-laws, in respect to the subject under consideration, which shall be free from objections.   It is plain, however, that, in re-

spect to transactions like that in question, the corporation must be regarded as either a mere agent of the members for the purchasing of wheat with their money, and delivering it to them, itself having no interest in the property, or else it must be deemed to have acquired title to the property in itself.

The latter view, we think, is the correct one. Of course the property, though in the corporation, was acquired and held for the benefit of its members, and was to be applied for their benefit in the manner prescribed by the by-laws, which we must regard as expressing the agreement between and the intention of the corporation and its several members. It is to be observed that the by-laws provide that the wheat shall be purchased by the general agent "*for the association.*" They further provide that "wheat bought by any member of the association at the city of Minneapolis *shall be the wheat of the association*, and shall be reported to and accounted for with the general agent, by the member purchasing, as a part of his distributive share of wheat." The general agent was required to furnish security to the association for the faithful performance of his duties; and provision was made, also, for security to the association from subagents employed to purchase wheat and to handle its moneys. No provision was made for like security to the members, who are claimed to be the principals in these transactions and the owners of the property. Losses occasioned through the default of the subagents were to be borne "by the association," and, in case of loss by fire, it was to be "borne by the association as a whole, the same as any other loss;" that is to say, it was to be distributed "among the members *pro rata* to their daily average distributive share of wheat."

Members who had paid money to the general agent, as required, for the purchase of wheat, could not control the action of the agent in respect to its disbursement, excepting to a limited extent. They could not remand the money or prevent its expenditure, excepting upon a notice of 24 hours; and within that time it might be all expended in the purchase of wheat, although the members assumed to revoke the authority of the agent to do so. Such conditions might, perhaps, exist consistently with a relation of principal and agent. We can conceive that contract relations between several principals

engaged in a common enterprise, prosecuted through a common agent, might forbid any one, without the concurrence of the whole, to revoke the license or authority conferred upon the agent, although the latter had no interest in the subject of the agency. But it would seem from the by-laws by which this business was regulated that, even if all of the individual members were to undertake to revoke the authority of the association to disburse the moneys paid to it for the purchase of wheat, they could not do so at once, and, before their revocation would become operative, the association might expend the whole of the money. We think these things and the general tenor of the by-laws, taken in connection with the expressed and limited purposes of the organization, indicate an intention that the corporation should take and hold the money required for the purchase of wheat, and the wheat, when purchased, as owner, and not as a mere bailee or agent of the several members.

Prior to the first day of May, a division of the wheat in question (then in store and in shipment consigned to it) had been made upon the books of the association, and vouchers or reports thereof, showing the amount each was entitled to receive, had been delivered to the members, they being also charged upon the books with the amounts to which they were entitled respectively. The members might, upon demand, receive their respective distributive shares of wheat as indicated by such vouchers. This had not the effect to divest the association of its property and transfer the title to the individual members. There was still necessary, for the identification of the specific property to be received by the members, the process of setting apart from a common mass the proper amount of each member's share, by weighing or measuring, and the presumption is that it was not intended that the title should pass until this should be done. There is not only not apparent an intention that title should pass before this should be done, but the contrary intention is indicated by section 27 of the by-laws, which shows that it was contemplated that the members might not actually receive wheat in the proper distributive proportions to which they were entitled.

Taxes were paid by individual members of the association · upon certain other property which may have been taxable only to the cor-

poration. The court properly declined to require the payment of the same tax a second time by the corporation. So far as the state is concerned, it is sufficient that the tax upon the property has been paid.

The decision of the court below is affirmed, and judgment will be entered in accordance therewith.